1   BROWNE GEORGE ROSS
    O'BRIEN ANNAGUEY & ELLIS LLP
2   Keith J. Wesley (State Bar No. 229276)
       kwesley@bgrfirm.com
3   Matthew L. Venezia (State Bar No. 313812)
       mvenezia@bgrfirm.com
4   Serli Polatoglu (State Bar No. 311023)
       spolatoglu@bgrfirm.com
5   Joachim B. Steinberg (State Bar No. 298066)
       jsteinberg@bgrfirm.com
6   George B. A. Laiolo (State Bar No. 329850)
       glaiolo@bgrfirm.com
7   2121 Avenue of the Stars, Suite 2800
    Los Angeles, California 90067
8   Telephone: (310) 274-7100
    Facsimile: (310) 275-5697
9
    Attorneys for Plaintiff Atari Interactive, Inc.
10

11              UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

13   ATARI INTERACTIVE, INC.,                Case No. 4:19-CV-00111-JST-DMR

14              Plaintiff,
                                             **PLAINTIFF ATARI INTERACTIVE,**
15        vs.                                **INC.'S OPPOSITION TO DEFENDANT**
                                             **TEESPRING, INC.'S MOTION FOR**
16   TEESPRING, INC.,                        **SUMMARY JUDGMENT OR, IN THE**
                                             **ALTERNATIVE, SUMMARY**
17              Defendant.                   **ADJUDICATION**

18
                                             Judge:   Hon. Jon S. Tigar
19                                           Date:    November 4, 2021
                                             Time:    2:00 pm
20                                           Crtrm.:  6

21
                                             Pretrial Conf.:   April 1, 2022
22                                           Trial Date:       May 2, 2022

23

24

25

26

27

28

1925253

Case No. 4:19-CV-00111-JST-DMR

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. STATEMENT OF FACTS. .............................................................................................. 1

  A. Atari and Its Intellectual Property. ................................................................................ 1

    1. History of Atari. ......................................................................................................... 1

    2. Evolution of Atari. ..................................................................................................... 2

    3. Atari's Trademarks and Copyrights. ......................................................................... 3

  B. Teespring's Business Model. ........................................................................................ 4

    1. Teespring operates a "print-on-demand" website. .................................................... 4

    ████████████████████████████████ ........................................................ 5

  C. Teespring's infringement of Atari's intellectual property. ........................................... 7

III. ARGUMENT. ................................................................................................................... 9

  A. Legal Standard. .............................................................................................................. 9

  B. Atari can prevail on its trademark infringement claims. ............................................. 10

    1. Teespring's trademark use is plainly "source identifying." .................................... 10

    2. Actual confusion evidence is not required, and analysis of the *Sleekcraft* factors established the likelihood of confusion, ................................................................... 11

    3. Teespring counterfeited Atari's trademarks. .......................................................... 12

      a. Teespring used identical, spurious marks. ........................................................ 12

      b. Teespring acted with the requisite intent. ........................................................ 13

    4. Teespring's argument on indirect liability is moot. ................................................ 15

  C. Atari can prevail on its copyright infringement claims. .............................................. 15

    1. Atari can demonstrate both ownership and the scope of the relevant copyrights. ........ 15

    2. Atari can prevail on its contributory copyright infringement claim. ....................... 17

  D. There is no basis to bar Atari from seeking statutory damages. ................................... 17

    1. Atari properly disclosed is statutory damages theory. ............................................ 17

    2. Atari did not fail to produce any evidence related to damages. ............................... 19

  E. Teespring's infringement was willful. ......................................................................... 20

IV. CONCLUSION. ............................................................................................................... 20

1925253

-i-

Case No. 4:19-CV-00111-JST-DMR

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................ 17

5

6

*Adobe Sys. v. Stargate Software, Inc.*,
   216 F. Supp. 2d 1051 (N.D. Cal. 2002) ................................................ 9

7

*Alaska Stock, LLC v. Pearson Educ., Inc.*,
   975 F. Supp. 2d 1027 (D. Alaska 2013), 975 F. Supp. 2d .................... 18

8

9

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir.1979) ........................................................... 11, 12

10

11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................. 9

12

*Apple Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 926 (N.D. Cal. 2009) ................................................ 19

13

14

*Atari Interactive, Inc. v. Redbubble, Inc.*,
   515 F. Supp. 3d 1089 (N.D. Cal. 2021) ......................................... 16, 18

15

16

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062 (9th Cir. 2006) ........................................................ 10, 11

17

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. C 10–3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ........ 16

18

19

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ............................................................ 12

20

*Chanel v. Veronique Idea Corp.*,
   795 F. Supp. 2d 262 (S.D.N.Y. 2011) ................................................. 12

21

22

*Christopher Phelps & Assocs., LLC v. Galloway*,
   492 F.3d 532 (4th Cir. 2007) .............................................................. 16

23

24

*Coach, Inc. v. Horizon Trading USA Inc.*,
   908 F. Supp. 2d 426 (S.D.N.Y. 2012) ................................................. 12

25

*Entertainment One UK Ltd. v. 2012Shilliang*,
   384 F. Supp. 3d 941 (N.D. Ill. 2019) .................................................. 12

26

27

*GeoMetWatch Corp. v. Hall*,
   No. 1:14-cv-00060-JNP, 2018 WL 6240991 (D. Utah Nov. 27, 2018) ........ 18

28

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
    955 F.2d 1143 (7th Cir.1992) ................................................................................................ 13

*Henri's Food Products Co. Inc. v. Kraft, Inc.*,
    717 F.2d 352 (7th Cir.1983) .................................................................................................. 13

*Int'l Ord. of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912 (9th Cir. 1980) ........................................................................................... 10, 11

*Millennium Lab'ys, Inc. v. Ameritox, Ltd.*,
    817 F.3d 1123 (9th Cir. 2016) ............................................................................................... 11

*New Form, Inc. v. Tekila Films, Inc.*,
    357 F. App'x. 10 (9th Cir. 2009) .......................................................................................... 20

*Nissan Motor Co. v. Nissan Computer Corp.*,
    378 F.3d 1002 (9th Cir. 2004) ............................................................................................... 12

*Novelty Textile, Inc. v. Windsor Fashions, Inc.*,
    No. CV 12-05602 BRO, 2013 WL 12114062 (C.D. Cal. Aug. 21, 2013) ............................. 18

*Phillip Morris USA Inc. v. Shalabi*,
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) ........................................................................... 11, 13

*PoloFashions, Inc. v. Craftex, Inc.*,
    816 F.2d 145 (4th Cir. 1987) ................................................................................................ 11

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ............................................................................................... 12

*Sara Lee Corp. v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) .................................................................................... 20

*State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*,
    425 F.3d 708 (9th Cir. 2005) ........................................................................................... 13, 15

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998) ................................................................................................. 16

*UL LLC v. Space Chariot Inc.*,
    250 F. Supp. 3d 596 (C.D. Cal. 2017) .................................................................................. 19

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
    No. 00 CIV. 472(JSR), 2000 WL 1262568 (S.D.N.Y. Sep. 6, 2000) .................................... 18

*Undiscovered Corp. v. Heist Studios*,
    No. CV 18-5719 FMO, 2019 WL 8219489 (C.D. Cal. Oct. 1, 2019) .................................... 18

*Vuitton Et Fils S.A. v. J. Young Enters., Inc.*,
    644 F.2d 769 (9th Cir. 1981) ................................................................................................ 11

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ........................................................................................................ 12

Lanham Act ..................................................................................................................... 13, 18

1925253

-iv-                                        Case No. 4:19-CV-00111-JST-DMR

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  Plaintiff Atari Interactive, Inc. ("Atari") hereby opposes Teespring, Inc.'s ("Teespring")
2  Motion for Summary Judgment, or in the Alternative, Summary Adjudication (the "Motion") as
3  follows.

4  **I.    PRELIMINARY STATEMENT.**

5  Defendant Teespring owns and operates a "print-on-demand" website,
6  www.teespring.com. Teespring encourages users of its site to upload images, which Teespring
7  virtually places on pictures of items that Teespring offers for sale. To encourage users to upload
8  designs, Teespring offers the users a cut of the profit from any sales made on the site. Incentivized
9  by Teespring to make money, users often upload counterfeit or infringing designs, taking
10  advantage of the goodwill of well-known intellectual properties to make quick money—After all,
11  far more people are searching the internet (and Teespring's site) for "Fortnite t-shirt" or "Tiger
12  King mug" than "unique nature design created by Jane Doe." Customers then order the counterfeit
13  goods from www.teespring.com; Teespring processes the payment and facilitates the
14  manufacturing and shipping of the counterfeit product; and Teespring sends the previously agreed
15  upon percentage to the user and keeps the rest for itself. The intellectual property owner, not
16  surprisingly, gets nothing (except likely a lost sale of its corresponding authentic product).

17  Although many brands have been and continue to be infringed on Teespring, the brand in
18  question here is the venerable video game brand Atari. Teespring offered for sale and sold
19  products—primarily apparel—bearing exact copies of plaintiff Atari's registered ATARI® and
20  PONG® trademarks and copyrighted video game graphics.

21  Teespring does not argue that its products are anything but literal copies of Atari's
22  protected intellectual property. Instead, it argues that the use of Atari's logo is not source-
23  identifying and that it lacked any intent to infringe. This Court should reject those arguments and
24  deny Teespring's Motion for Summary Judgment.

25  **II.    STATEMENT OF FACTS.**

26      **A.    Atari and Its Intellectual Property.**

27          **1.    History of Atari.**

28  Atari is an originator in the video game industry. Declaration of Matthew Venezia

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

("Venezia Decl."), Ex. A, Expert Report of Tim Lapetino ("Lapetino Report") ¶¶ 19–21. Starting in the mid-1970's, Atari created the first successful, commercial coin-operated arcade games. *Id.* at ¶ 19. *Pong* was one of Atari's most successful arcade games, selling $3.2 million worth of games and sequels by 1974. *Id.* Atari then proceeded to produce numerous other successful games in arcade format, including *Asteroids* and *Centipede*. *Id.* ¶¶ 31, 32.

But Atari is perhaps even more well-known for producing the most successful home video game console of the 1980s, the Atari 2600. *Id.* ¶ 20. The Atari 2600 console popularized cartridge-based video game consoles selling approximately *30 million* units. *Id.* Atari also produced numerous successful games for its 2600 console, including *Adventure*, *Asteroids*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. *Id.* ¶¶ 29–34, 38.

The commercial success and advertising of Atari created strong brand recognition for Atari and its games in the 1970's and 1980's that persists to this day. *Id.* ¶¶ 19–23; Venezia Decl. Ex. B, Expert Report of Christopher Lucero ("Lucero Report") ¶¶ 28-38; Brown Decl., ¶¶ 6-7.

## 2.   Evolution of Atari.

Throughout the decades, Atari and its games have remained well-known. Atari sold its Jaguar console in the 1990's, and its Atari Flashback and Greatest Hits products in the 2000's and 2010's—providing gameplay of the Atari classics. Lapetino Report, ¶ 23; And Atari recently released its new Atari VCS console, an anticipated product for which Atari raised in excess of $3 million in crowdfunding. Brown Decl., ¶ 8.

Atari has long monetized the goodwill associated with its video game products by licensing its intellectual property for use on a variety of consumer products, including apparel. *Id.* ¶ 16. Atari has license agreements with several apparel companies, allowing those apparel companies to use Atari's intellectual properties in exchange for a licensing fee. *Id.* ¶¶ 16-17 All in all, licensing fees accounted for more than ███████ in revenue for Atari in 2019 alone. *Id.* ¶ 19.

Officially licensed Atari products can be found at major retailers such as Game Stop, Target, and Amazon. Lucero Report ¶¶ 40-41. The allocation of shelf and inventory space to Atari-branded products evidences the continued value of the brand. *Id.* Similarly, Atari recently entered into an agreement with GSD Group to open several Atari-themed hotels. Brown Decl., ¶

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

17. Atari's intellectual property also regularly appears in pop culture, for instance, in Steven Spielberg's 2018 film *Ready Player One*., in the Netflix series *The Outer Banks*, and during the Logan Paul vs. Floyd Mayweather boxing match. *Id.* ¶ 18.

### 3. <u>Atari's Trademarks and Copyrights.</u>

Atari owns federal registrations for its ATARI® and PONG® trademarks for use on clothing, namely t-shirts, sweat shirts, and hats. *Id.* at ¶¶ 11-12 & Exhs. A, B. Examples of these marks are pictured below.



Additionally, Atari holds copyright registrations for its Atari Greatest Hits games. Brown Decl., ¶¶ 13-14 & Exhs. C, D. The Atari Greatest Hits games allow users to play Atari's video games, and include original artwork from those games, including *Adventure*, *Asteroids*, *Centipede*, *Missile Command*, and *Yar's Revenge*. *Id.* ¶ 7. Examples of copyrighted elements from these games are picture below. Venezia Decl. ¶ 10.

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    In addition to trademark and copyright registrations obtained by Atari itself, Atari owns

2  registrations that were obtained by its predecessors-in-interest—*i.e.*, entities that owned the Atari

3  brand prior to Atari Interactive, Inc. Atari acquired the pre-existing registrations through a series

4  of written assignments and corporate mergers that are set forth in the Brown Declaration and

5  Exhibits G–O thereto.

6    **B.    Teespring's Business Model.**

7        **1.    Teespring operates a "print-on-demand" website.**

8    Atari understands that registered Teespring users are able to upload designs to the

9  Teespring website. Reeves Depo., 35:17–19; 37:18–24. Teespring users are then able to select

10  how many different types of products the design will be offered for sale on, with Teespring

11  offering approximately 60 different options. *Id.* at 35:20–36:19. Teespring then generates and

12  hosts a product listing page for the product, an example of which is given below.



28  Venezia Decl., Exh. F.

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    Teespring does not maintain stock of finished products, but instead, when a product is

2    ordered on Teespring's website, Teespring either prints the item itself, or pays one if its

3    manufacturing partners to print the item. Reeves Depo., 58:17–59:4. Whether Teespring will print

4    the item itself or send the order to one of its printing partners is determined by a number of

5    factors, including the location of the customer, type of product ordered, and order size. *Id.* at

6    58:25–59:4.



PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION



[redacted]

[1] Atari recognizes that Teespring management witnesses attempted to distance Teespring from its Takedown Policy. But, on summary judgment, Ms. Fisher's testimony that she was provided and referred to this Takedown Policy in the performance of her job must be credited. And, while Teespring's motion argues this policy was in place until 2015/2016, Ms. Fisher was not even hired until 2018. Fisher Depo., 12:18–20.



**C.** **Teespring's infringement of Atari's intellectual property.**

Prior to filing its lawsuit, Atari captured screenshots of pages upon pages of counterfeit and infringing Atari products offered for sale by Teespring, returned in response to a query for "atari" on Teespring's website. Venezia Decl., ¶ 8. The counterfeits go on for hundreds of pages, but excerpts from this evidence showing examples of the counterfeit and infringing products at issue in this case are below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27
28

Because searches on Teespring's website only return designs uploaded by users with trust

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

scores of three or higher, each of the above products, and every product in the hundreds of pages of search results, were created by users with trust scores of at least three. This indicates that members of Teespring's trust and safety team conducted ***manual reviews*** of these product listings, and decided not to pull them down. Indeed, Teespring even selected a counterfeit Atari hoodie to be a "promoted" product. Reeves Depo., Exh. 24. Teespring would conduct human review of the item before making such a selection. Reeves Depo., 109:22–110:23.

Lastly, while Teespring argues sales of counterfeit Atari products were minimal, Teespring has never produced accurate or complete sales records. First, Atari does not even know what search terms Teespring used to create its sales spreadsheet—Teespring's 30(b)(6) designee on the topic was not prepared to confirm. Stevenson Depo., 87:9–15 ("Q. Do you know what keywords were searched by Teespring specifically? A. I don't have in my head the complete list, but I believe it was, you know, obviously Atari and then Atari plus, some of the other more generic type terms that Atari claims are related to its intellectual property."). This is important because counterfeiters often use names associated with a brand—like "2600"—to disguise counterfeits, and a query simply for "atari" is likely to miss many counterfeits. *See, e.g.*, Venezia Decl., ¶ 9, Ex. G (t-shirt with counterfeit Atari mark titled "2600.") That thousands of counterfeit Atari products were available for sale on Teespring's website, but only a small few ever had any sales also defies credulity. This is of course difficult to prove with the sales records entirely in Teespring's possession. However, as but one discrepancy, Teespring's produced sales records indicate no sales of the counterfeit Atari hoodie Teespring selected to be a "promoted" product—even though Teespring testified that decision was "determined by sales". Reeves Depo., 110:11–17.

## III.   ARGUMENT.

### A.   Legal Standard.

Summary judgment is inappropriate if genuine material factual issues exist for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. This Court "must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and the weight to be accorded particular evidence." *Adobe Sys. v. Stargate Software, Inc.*, 216 F. Supp.

1  2d 1051, 1053 (N.D. Cal. 2002).

2        **B.**    **<u>Atari can prevail on its trademark infringement claims.</u>**

3        **1.**    **<u>Teespring's trademark use is plainly "source identifying."</u>**

4        Teespring argues that Atari's marks are not "source identifying," because the marks are

5  "decorative." Dkt. No. 88, 16–17. This "defensive aesthetic functionality" argument is not only

6  misguided, but has been widely rejected both in the Ninth Circuit and elsewhere. As the leading

7  treatise on trademarks states, "the notion of a defensive type of aesthetic functionality is bad law,

8  poor policy and provides no coherent rules." 1 McCarthy on Trademarks and Unfair Competition

9  § 7:82 (5th ed.). "Accepting [defendant's] position would be the death knell for trademark

10  protection. It would mean that simply because a consumer likes a trademark, or finds it

11  aesthetically pleasing, a competitor could adopt and use the mark on its own products." *Au-*

12  *Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064 (9th Cir. 2006).

13        In *Au-Tomotive Gold*, the defendant made automotive accessories like license plate frames

14  and key chains using the Volkswagen and Audi marks. *Id.* at 1065. The Ninth Circuit rejected

15  defendant's claim of aesthetic functionality, explaining:

16            [C]onsumers want "Audi" and "Volkswagen" accessories, not
          beautiful accessories. This consumer demand is difficult to

17            quarantine from the source identification and reputation-enhancing
          value of the trademarks themselves. . . . Any disadvantage Auto

18            Gold claims in not being able to sell Volkswagen or Audi marked
          goods is tied to the reputation and association with Volkswagen and

19            Audi.

20  *Id.* at 1074. The same is true here—there is no evidence that consumers purchase Atari or Pong

21  shirts because they believe the shirts are beautiful. *See id.* at 1072 (party asserting aesthetic

22  functionality defense against registered mark has the burden to establish functionality). Consumers

23  purchase shirts emblazoned with those marks because of their association with the iconic Atari

24  brand; certainly a reasonable jury could so find. Lucero Decl., Exh. A, ¶ 24 ("Considering the

25  unique place of Atari and its games in video game history and the nostalgia surrounding the brand,

26  Atari and its intellectual property remain extremely valuable across many licensed categories.");

27  Brown Decl., Exhs. E-F (licensing agreements for use of Atari® and Pong® marks).

28        Teespring mostly relies on *Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

912, 918 (9th Cir. 1980) for its argument that its use of the Atari marks is not source-identifying. But the analysis of *Job's Daughters* has been limited if not entirely rejected in later Ninth Circuit jurisprudence—the case certainly retains no applicability to well-known logos and marks. *See Automotive Gold*, 457 F.3d at 1069 ("*Job's Daughters*, with its collective mark, was a somewhat unique case and its broad language was soon clarified and narrowed."); *Vuitton Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 776–77 (9th Cir. 1981) (rejecting argument that Louis Vuitton's fabric design is merely functional).[2]

Nor do other cases cited by Teespring support its position. *LTTB LLC v. Redbubble, Inc.*, involved a "LETTUCE TURNIP THE BEET" design, not a well-known mark. 840 F. App'x 148, 150 (9th Cir. 2021) ("there is no evidence here that consumers buy LTTB's goods because they identify LTTB as the source"). And, in *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, the "[d]efendants use[d] the words Betty Boop *as an artistic design element and identify themselves* as the source of the goods, [therefore] their use of the words Betty Boop simply cannot be viewed as source-identifying." 925 F. Supp. 2d 1067, 1074 (C.D. Cal. 2012) (emphasis added). By contrast, the uses here are unadorned and do not try to identify an alternative source.

> ## 2. Actual confusion evidence is not required, and analysis of the *Sleekcraft* factors established the likelihood of confusion,

The Ninth Circuit uses an eight-factor test (the "*Sleekcraft*" factors) to determine the likelihood of confusion, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), but where, as here, the marks are counterfeit, likelihood of confusion should be presumed. *PoloFashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148–49 (4th Cir. 1987) (use of a counterfeit mark "so unassailably established" the likelihood of confusion as to warrant summary judgment on liability); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004)

---

[2] Atari does not understand that Teespring argues its use of Atari's marks satisfies the *Inwood Laboratories* definition of functionality—essential to the use or purpose of the article [or] affects [its] cost or quality." *Millennium Lab'ys, Inc. v. Ameritox, Ltd*., 817 F.3d 1123, 1128–29 (9th Cir. 2016). However, such an argument would fail. The Atari marks serve *no* purpose other than identifying source and association. A t-shirt bearing the Atari logo still functions as an article of clothing whether it has the mark, and a mug with the logo on it holds the same amount of liquid.

(same); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (same); *Chanel v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267 (S.D.N.Y. 2011) (same).

Nonetheless, analysis of the *Sleekcraft* factors weighs overwhelmingly in favor of a likelihood of confusion. *See Entertainment One UK Ltd. v. 2012Shilliang*, 384 F. Supp. 3d 941, 949–50 (N.D. Ill. 2019) (finding online counterfeiting as a matter of law). In particular, there is no reasonable debate that the Redbubble products would create a likelihood of (a) post-sale confusion, *Academy of Motion Picture Arts & Sciences*, 944 F.2d 1446, 1456 (9th Cir. 1991), (b) initial interest confusion, *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004), or (c) confusion as to an affiliation or endorsement. 15 U.S.C. § 1125(a)(1)(A). The Teespring products use identical marks on the same class of goods. This leads to likelihood of confusion "as a matter of course." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999). The ATARI® and PONG® marks are strong, conceptually and in the marketplace, the very reason why they were chosen for Teespring's products. Any lack of actual confusion evidence does not weigh against the likelihood of confusion: Atari is not a retailer that has contact with customers such that it would have an opportunity to witness confusion. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014) ("difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy").

### 3.  Teespring counterfeited Atari's trademarks.

#### a.  Teespring used identical, spurious marks.

Teespring argues that Atari cannot demonstrate that Teespring sold products that were "stitch for stitch copies" of those offered by Atari. As a threshold matter, The "stitch for stich" language emanated from *Gucci America, Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207 (S.D.N.Y. 2012). That case involved a comparison of marks, for example, Gucci's "GG Pattern" with Guess's "Quattro G Pattern", not the use of spurious marks on slightly varied product types, like t-shirts vs. v-neck t-shirts. *Id.* at 247. What is truly at issues is differences in the mark, not the product for which it is printed on. *See* 4 McCarthy on Trademarks & Unfair Competition § 25:10 (5th ed. 2021) (simply put, a counterfeit mark "is a false mark that is identical with, or substantially indistinguishable from, the genuine mark"). This agreement is academic here,

however, because Teespring copies both Atari's marks and its products.

**b.**   **Teespring acted with the requisite intent.**

A reasonable juror could find that Teespring acted with any level of intent required by *State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005), to assess an award of statutory damages. As an initial matter, liability under the Lanham Act does not require a finding that an infringer acted with intent. *See, e.g.*, *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073–74 (C.D. Cal. 2004) ("defendants'sale of counterfeit cigarettes bearing Plaintiff's marks, whether done intentionally or not, violated both sections 32(1) and 43(a) of the Lanham Act"); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n. 6 (7th Cir.1992)("Sellers bear strict liability for violations of the Lanham Act."); *Henri's Food Products Co. Inc. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir.1983). Ignorance of whether the marks were counterfeit is no defense to a counterfeiting claim. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073–74 (C.D. Cal. 2004).

Again, Teespring employs a trust score system where users' listings are manually reviewed for infringement the first time they make a sale, to determine whether to raise their trust score from zero to one. Fisher Depo., 49:9–51:23, 64:14–65:12; Stevenson Depo., 27:4–23. Further such manual reviews are conducted to raise a trust score to two, three, or higher. *Id.* Because the counterfeit items here appeared in search results, and only designs from Teespring users with a trust score of three or higher appear in search results, we know that Teespring conducted multiple manual reviews of the user accounts that uploaded counterfeit Atari designs, but failed to remove the items. Stephenson Depo., 29:15–30:7.[3]

Nor is this far-fetched. Teespring's takedown policy suggests that known infringements should not be removed unless Teespring has a complaint on file concerning the particular intellectual property. Fisher Depo., Exh. 2. Because there was no complaint from Atari on file, it was consistent with Teespring policy for a member of its trust and safety team to view a known

---

[3] Indeed, Teespring even manually selected at least one product with a counterfeit Atari mark to be a "promoted" item. Reeves Depo., 109:22–110:23, Exh. 24.

1925253

-13-                                          Case No. 4:19-CV-00111-JST-DMR

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

counterfeit of the Atari mark, and leave the design up. Similarly, members of Teespring's trust and safety team were instructed to remove designs for "A-list" celebrities, but keep designs up for "B-list" celebrities. *Id.* Query what action a Teespring content moderator would take if it deemed Atari to not be on the "A-list" of brands.

Indeed, even Dave Stevenson, Teespring's General Counsel, testified that,[4] prior to Atari's lawsuit, he does not know whether he would have directed a product with a counterfeit Atari logo to be removed from Teespring. Specifically, during Mr. Stevenson's deposition, he was directed to look at the following product:



Stevenson Depo., 60:6–61:5 & Exh. 20. Despite acknowledging that he was familiar with Atari before this lawsuit, *id.* at 62:23–25, Mr. Stevenson testified as follows:

> Q. And if you had come across this hoodie prior to Atari filing its lawsuit, would you have removed the hoodie from Teespring's website?
>
> A. I don't know.

*Id.* at 62:15–18.[5]

---

[4] Excerpts from the Depositions of Dave Stevenson, Tracy Reeves, and Brittany Fisher are attached to the Venezia Declaration as Exhibits C, D, & E.
[5] In this particular question, it appears Atari's counsel misspoke when he said "*Teespring* shirt". Atari provides the entire exchange which makes clear that the witness understood the question, and repeatedly testified similarly. *See* Stevenson Depo., 59:13-64:21.

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1      On this record, a reasonable juror could find Teespring has actual knowledge of the

2 counterfeit Atari designs, but continued to offer for sale and sell products emblazoned with those

3 designs, i.e., the same knowing use of a spurious mark found in *Idaho Potato Commission*.[6]

4      Alternatively, a reasonable juror could find Teespring to be willfully blind. While

5 Teespring testified that it does in fact manually review the listings of all users with sales for

6 infringement, to the extent Teespring argues its trust and safety team cannot review every listing,

7 Teespring devotes an exceptionally small amount of resources to its trust and safety team,

8 employing only four employees at an approximate total yearly cost of $224,000—less than a

9 quarter of one percent of Teespring's 2019 revenue. Reeves Depo., 42:22–43:25.

10               **4.**     **Teespring's argument on indirect liability is moot.**

11      Teespring argues that Atari's indirect trademark counterfeiting claims fail because Atari's

12 underlying theory of infringement fails. For the reasons set forth above, Atari can show underlying

13 trademark counterfeiting, so Teesping's argument is moot.

14     **C.**     **Atari can prevail on its copyright infringement claims.**

15              **1.**     **Atari can demonstrate both ownership and the scope of the relevant**

16                     **copyrights.**

17      Teespring argues that Atari cannot prove the that it owns copyrights in the asserted works,

18 and further argues that Atari's claims must fail because Atari cannot show what works are covered

19 by its copyright registrations. Dkt. No. 88, 21–25. Not so.

20      Plaintiff Atari owns the copyrights for *Adventure*, *Asteroids*, *Centipede*, *Missile Command*,

21 and *Yar's Revenge* as the assignee following a series of written assignments and corporate

22 mergers. Lapetino Report ¶¶ 29–34; Brown Decl., Exhs. G–O Atari is also the owner of a

23 copyright registration for its Greatest Hits Volume I game, which includes all of the above-

24 referenced games. Brown Decl., ¶ 7. Atari submits evidence of the relevant game graphics and

25

26     ——————————————

[6] Teespring also had general knowledge of the infringement on its platform. Stephenson Depo.,

27 16:15-17:9 (estimating that about 70% of the work of Teespring's legal counsel related to infringement).

28

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

original artwork as depicted in its Greatest Hits Volume I game, in the form of screenshots taken from the games, in addition to examples from its Atari expert. Venezia Decl.,¶ 10, Ex. H; Lapetino Report ¶¶ 28–34. [7]

Atari can rely on the compilation registration—for Greatest Hits Volume I—where it is undisputed that Atari also owns the copyrights for each of the classic games at issue here. "[B]ecause [Atari] is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007) ("[W]hen the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author."); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10–3428 PSG, 2013 WL 831528, at *4 (N.D. Cal. Jan. 10, 2013) (same).

This Court, considering the same arguments, already found this evidence was sufficient to establish Atari's copyright ownership and defeat summary judgment on these points. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1111 (N.D. Cal. 2021) ("[B]ecause Atari undisputedly owns the original works' copyrights, the registration of the subsequent work allows Atari to maintain an infringement action for the original copyright. . . .  [T]he screenshots of the game are sufficient to establish the content of the protected audiovisual elements[.]").

Lastly, Teespring's assertion that Atari failed to produce the relevant deposit copies is incorrect. On April 8, 2021, months before both the fact discovery cutoff and Teespring's deposition of Atari's 30(b)(6) designee, Atari produced images obtained from the Copyright Office, showing the relevant deposit copies. Venezia Decl., ¶ 12, Ex. J (deposit copy for Greatest Hits Volume I produced at AT005575–76). The actual copies of those games were not retained by

---

[7] While Teespring complains that such evidence was not produced, these screenshots were in fact produced months before the discovery cutoff and depositions. Venezia Decl., ¶ 10. .[7]

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    the Copyright Office, but this evidence proves the nature of those deposit copies. And, even if this

2    were not the case, *Corbis Corp. v. Amazon.com, Inc.*, cited by Teespring, explains that because

3    deposit copies are publicly available, Teespring could not move for summary judgment on the

4    grounds that Atari supposedly failed to produce them. 351 F. Supp. 2d 1090, 1115 (W.D. Wash.

5    2004) ("Because Amazon has equal access to the deposit, it cannot simply rest on Corbis's failure

6    to provide the evidence. To prove that Registration Nos. '966 and '124 do not protect the

7    Christensen Photo, Amazon has an obligation to obtain and provide the evidence available to

8    it.").[8]

9           **2.      Atari can prevail on its contributory copyright infringement claim.**

10           Teespring argues that contributory copyright infringement "requires 'actual, specific

11    knowledge of direct infringement,' or turning a blind eye. *A&M Records, Inc. v. Napster, Inc.*, 239

12    F.3d 1004, 1020 (9th Cir. 2001)[.]" Dkt. No. 88, 25:17–19. Atari meets the standard as recited by

13    Teespring. As explained above in Section III.B.3.b., a reasonable juror could find that Teespring

14    had actual knowledge of the infringing items, or alternatively, was willfully blind.[9]

15           **D.      There is no basis to bar Atari from seeking statutory damages.**

16           **1.      Atari properly disclosed is statutory damages theory.**

17           Atari will seek to recover statutory damages at trial, as it disclosed years ago in its Initial

18    Disclosures. *See* Venezia Decl. ¶ 11, Ex. I.  In response to Teespring's requests for more

19    specificity, and cognizant of the arguments made by Redbubble in the related case, Atari provided

20    the following supplemental interrogatory response months before the discovery cutoff:

21                 In addition to its actual damages, Atari is entitled to and seeks

22    _____

[8] In *Hayes v. Minaj*, the registration certificate did not clearly reference the asserted copyrights,
23    and the deposit copy was not available from the Copyright Office. No. 2:12-cv-07972-SVW-SH,
     2013 WL 11328453, at *4 (C.D. Cal. Mar. 7, 2013). Here, the registration certificates clearly
24    reference the relevant video games, and records from the Copyright Office confirm those video
     games were submitted as deposit copies.

25    [9] Atari does not agree with the Court's reasoning in *Redbubble I.*, 515 F. Supp. 3d at 1115–16,
26    concerning vicarious copyright infringement, but does agree that this case is factually similar to
     Redbubble I, such that the Court is likely to reach the same result on this particular claim. For the
27    purpose of making its record, Atari notes that Teespring receives a percentage of each infringing
     sale, has the contractual authority to terminate users, and the ability to locate infringing designs,
28    e.g., by searching for "atari."

statutory damages. Specifically, Atari is entitled to and seeks $2 million in statutory damages per each registered mark per type of goods or services, and $150,000 per each copyright infringement.

It is premature to perform these multiplications because Atari's discovery efforts concerning Teespring's infringements are ongoing. However, to arrive at a final damages figure, Atari would simply multiply the statutory damages figures cited above times the categories of goods (e.g., men's t-shirts, women's sweatshirts, etc.) and copyright infringements (*Adventure*, *Centipede*, etc.).

Dkt. No. 88-8, 7.

Atari is of course aware of the Court's later ruling in *Atari Interactive, Inc. v. Redbubble, Inc.* that "Atari may seek an award of minimum statutory damages without disclosing any damages calculations but, to avoid a potential windfall, it must provide some evidence of its lost profits or Redbubble's profits if it seeks an award greater than the statutory minimum." No. 18-cv-03451-JST, 2021 WL 2766893, at *4 (N.D. Cal. June 29, 2021) ("*Redbubble II*").

However, Atari respectfully maintains its position that its statutory damages disclosure satisfied any disclosure obligation—"any attempt to reduce this determination to some kind of mathematical formula or equation is spurious." *UMG Recordings, Inc. v. MP3.Com, Inc.*, No. 00 CIV. 472(JSR), 2000 WL 1262568 at *5 (S.D.N.Y. Sep. 6, 2000); *Undiscovered Corp. v. Heist Studios*, No. CV 18-5719 FMO (ASx), 2019 WL 8219489, at *5 (C.D. Cal. Oct. 1, 2019) (holding no computation of statutory damages required); *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027, 1046 (D. Alaska 2013), 975 F. Supp. 2d at 1046 (same); *see also Novelty Textile, Inc. v. Windsor Fashions, Inc.*, No. CV 12-05602 BRO (MANx), 2013 WL 12114062, at *7 (C.D. Cal. Aug. 21, 2013) (awarding statutory damages deemed reasonable by court where plaintiff did not request any particular amount of statutory damages); *GeoMetWatch Corp. v. Hall*, No. 1:14-cv-00060-JNP, 2018 WL 6240991, at *16 (D. Utah Nov. 27, 2018) (denying summary judgment on, among other claims, a claim for statutory damages under the Lanham Act for failure to disclose, holding "the court has been unable to find any authority suggesting that a party is precluded from seeking nominal or statutory damages for failing to include a 'computation' of such damages in its initial disclosures.").

Atari does not stubbornly stand on principle. If Atari knew how to provide a calculation of

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

its statutory damages claim it would, but determining the proper amount of statutory damages requires the balancing of several factors that do not lend themselves to mathematical equations:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the trademark [or copyright]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 614 (C.D. Cal. 2017); *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 926, 928 (N.D. Cal. 2009). One cannot multiply intent by deterrence and then subtract cooperation in providing records—these factors require qualitative judgments to be made by the jury. Atari would concede that certain of these factors are economic in nature, but as discussed below, Atari properly produced any evidence that it would use in support of the economic factors.

## 2.      Atari did not fail to produce any evidence related to damages.

The Court should consider the following question. What actual evidence relating to damages did Atari fail to produce? Atari has met and conferred with Teespring for hours on the topic, and reviewed Teespring's moving papers, and Teespring can point to no ***evidence*** that Atari failed to produce. In other words, this is not a discovery or disclosure issue. Teespring does not believe the evidence supports a finding that Atari suffered significant actual damages. But, the jury should be allowed to consider the following properly disclosed evidence relevant to actual damages when fashioning a statutory damages award.

**The value of the trademark or copyright.** Atari produced numerous licensing agreements indicating what third parties actually pay in the marketplace for the right to use Atari's intellectual property. Brown Decl., ¶ 16. Atari also produced existing financial records reflecting licensing revenue received by Atari. *Id.* ¶ 19. This evidence is directly relevant to the value of the IP. Atari also retained an expert—Christopher Lucero—who can testify both as to the strength of Atari's IP and its value from a licensing perspective. *See* Lucero Report ¶¶ 34-41.

Teespring criticizes Atari for not producing evidence concerning it "corrective advertising expenses" or "harm to goodwill and reputation[.]" Dkt. No. 88, 31. But, Atari does not assert it

1  engaged in corrective advertising, and Atari is not in possession of any undisclosed evidence

2  quantifying harm to goodwill or reputation. Indeed, statutory damages exist in large part because

3  such damages are difficult to quantify. *See, e.g.*, *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.

4  Supp. 2d 161, 166 (S.D.N.Y. 1999). Not only did Atari not fail to produce any evidence, but the

5  types of evidence raised by Teespring are not required for a statutory damages award. *New Form,*

6  *Inc. v. Tekila Films, Inc.*, 357 F. App'x. 10, 11 (9th Cir. 2009) ("We have consistently held and

7  stated that statutory damages are recoverable without regard to the existence or provability of

8  actual damages.") (citing *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham,*

9  *Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149

10  F.3d 987, 996 (9th Cir. 1998); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th

11  Cir. 1990)).

12        **The expenses saved and the profits reaped/the revenues lost by the plaintiff.** Atari's

13  licensing agreements are also relevant to show the cost of licensing Atari's intellectual property,

14  i.e., the expenses saved by Teespring. Moreover, while Atari does not believe Teespring has

15  maintained or provided accurate records of its sales figures, evidence concerning Teespring's sales

16  of infringing Atari items is in Teespring's possession, and the limited evidence that Teespring did

17  produce is relevant for this purpose.

18        **E.**      __Teespring's infringement was willful.__

19        Atari agrees that willful infringement requires a finding that Teespring either had actual

20  knowledge of the infringement, was willfully blind, or acted in reckless disregard of Atari's rights.

21  Dkt. No. 88, 33:20–28. However, as explained above in Section III.B.3.b., a reasonable juror

22  could find that Teespring had actual knowledge of the infringing products, or alternatively, was

23  willfully blind.

24  **IV.**      __CONCLUSION.__

25        For the reasons set forth above, the Court should deny the Motion in its entirety.

26

27

28

1925253

-20-      Case No. 4:19-CV-00111-JST-DMR

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1 │ DATED:  October 27, 2021

2

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
    Keith J. Wesley
    Matthew L. Venezia
    Serli Polatoglu
    Joachim B. Steinberg
    George B. A. Laiolo

By:      /s/ Matthew L. Venezia
              Matthew L. Venezia
Attorneys for Plaintiff Atari Interactive, Inc.

PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO DEFENDANT TEESPRING, INC.'S MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION