UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TEESPRING, INC.,<br><br>    Defendant. | Case No. 19-cv-00111-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 88 |

Before the Court is Defendant Teespring, Inc.'s motion for summary judgment. ECF No. 88. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiff Atari Interactive, Inc. brings this trademark and copyright infringement claim against Defendant Teespring, Inc. Teespring operates a website through which users can upload designs and select different types of products, including apparel, on which those designs will be offered for sale. Teespring does not design its own products, nor does it manufacture products to keep in stock. Instead, Teespring prints a product, or pays one of its manufacturers to print the product, once a customer places an order.

Atari contends that Teespring users uploaded designs that infringed on Atari's trademarks and copyrights, and that Teespring knew of or was willfully blind to such infringement. Teespring seeks summary judgment on all claims.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

1  any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
2  A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a
3  verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the
4  case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for
5  summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's
6  favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. It is not the court's duty "to scour the record in search of a genuine issue of triable fact"; instead, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). If the nonmoving party fails to make the required showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**IV.  DISCUSSION**

    **A.  Trademark Infringement**

Teespring first argues that it cannot be held liable for trademark infringement because the alleged use was aesthetically functional rather than source-identifying, and Atari has presented no evidence that consumers purchase Teespring's products because they associate the products with Atari and not simply because they like the products' design. However, Teespring incorrectly places the burden of demonstrating aesthetic functionality on Atari. Registered trademarks, like

2

those at issue in this case, are presumed to be non-functional, and it is Teespring that "must show that the marks are functional." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006). The test for aesthetic functionality is "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Id.* Teespring has cited "no evidence that consumers buy [Teespring's] products solely because of their 'intrinsic' aesthetic appeal," and not because the designs are "tied to the reputation [of] and association with" Atari. *Id.* at 1073-74. Accordingly, Teespring has not met its burden, and it is not entitled to summary judgment on grounds of aesthetic functionality.

Teespring also moves for summary judgment on Atari's counterfeiting claim. Its first argument, that Atari cannot show use of a counterfeit mark, is unpersuasive. Teespring relies on the conclusion in *Gucci America, Inc. v. Guess?, Inc.*, that "courts have uniformly applied [the counterfeiting] provision to *products* that are stitch-for-stitch copies of those of another brand." 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (emphasis added); *see also id.* at 253 ("As noted above, courts have uniformly restricted trademark counterfeiting claims to those situations where entire products have been copied stitch-for-stitch."). However, the *Gucci* court did not cite any authority to support that conclusion, nor has Teespring pointed to any.[1] In addition, the previous paragraph in the *Gucci* court's decision focused on identity of the mark, not the product. *Id.* at 242; *see also id.* at 247 (discussing similarities and dissimilarities between the registered and accused marks). Teespring is correct that "[c]ounterfeiting is a more specialized case of trademark infringement," but the reason for that is not because counterfeiting requires an exact replica of the product; it is "because a counterfeit 'is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 607 (C.D. Cal. 2017) (quoting 15 U.S.C. § 1127). The "question is whether the marks, not the goods, are substantially identical." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1027 (E.D. Wis. 2018). Teespring's motion does not argue that the marks themselves were not

---

[1] Teespring cites to *Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, to support its argument, but that case relied solely on the *Gucci* court's unsupported conclusion. No. 18-cv-0663-TSH, 2019 WL 1586776, at * 11 (N.D. Cal. Apr. 12, 2019).

1   identical, and it is not entitled to summary judgment on this basis.

2         Teespring next argues that Atari cannot demonstrate that Teespring intentionally used a
3   counterfeit mark with knowledge that the mark was counterfeit. This heightened knowledge is
4   required "to invoke § 1117's special civil monetary remedies against counterfeiting." *State of*
5   *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); 15
6   U.S.C. § 1117(b)(1) (providing for treble damages for counterfeiting "if the violation consists of
7   . . . intentionally using a mark or designation, knowing such mark or designation is a counterfeit
8   mark"). Although the record demonstrates that Atari did not give Teespring any pre-suit
9   notification of its claims that Teespring was infringing Atari's trademarks, and that Teespring
10  removed the allegedly offending products once it became aware of Atari's infringement claims,
11  Atari may still be able to establish the requisite knowledge at trial. Teespring does not dispute that
12  some of the allegedly counterfeit products appeared in search results on Teespring's website; that,
13  to appear in these results, the user who submitted the products must have had a trust score of at
14  least three; that trust scores, which start at zero and can go as high as five, are a proxy for how
15  likely a user is to violate Teespring's terms and conditions; and that to receive a trust score of
16  three or higher, a user would have had to go through several manual reviews, including reviews of
17  the user's product listings. A reasonable juror might conclude from this evidence that Teespring
18  employees must have known about the allegedly counterfeit products that appeared in the search
19  results. While Teespring argues that "[k]nowledge of a particular product's existence does not
20  create knowledge of an infringement as a matter of law," ECF No. 102 at 11, the supervisor of
21  Teespring's trust and safety team testified that, prior to this lawsuit, she knew of Atari and
22  recognized its logo. ECF No. 88-14 at 8. She further testified that if one of the members of her
23  team had shown her some of the allegedly counterfeit products prior to receiving Atari's
24  complaint, her response would have depended on the circumstances:

25  > If this was from one creator, typically we would ask – we would reach out to that creator to see if they have permission to use –
26  > permission to use the design. But if it looks like this creator has lots of designs, not just Atari, then we would – I would ask her to take it
27  > down.

28  *Id.* Viewing these statements in the light most favorable to Atari, a reasonable juror might

conclude that the supervisor recognized that the products copied Atari's trademark, and that the members of her team who performed manual reviews must also have known. Teespring is not entitled to summary judgment on Atari's counterfeiting claims.

Teespring argues that it is entitled to summary judgment on Atari's indirect trademark infringement claims "[b]ecause Atari has failed to establish its baseline direct trademark infringement claims." ECF No. 88 at 20. Having denied Teespring's motion for summary judgment on Atari's direct trademark infringement claims, the Court also denies Teespring's motion on Atari's indirect trademark infringement claims.

### B. Copyright Infringement

"To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Atari relies on three copyright registrations in this case: Atari Classics Evolved (PSP), Registration No. PA 1-746-829; Atari Greatest Hits Volume I (DS), Registration No. PA 1-805-830; and Atari Greatest Hits Volume 2 (DS), Registration No. PA 1-805-832. ECF No. 88-10 at 5. The copyright registration certificates do not themselves show what images are protected and instead include only general descriptors like "Interactive Audio-Visual Work" and "Different graphics, game play, audio-visual materials and instructional materials." ECF Nos. 88-21 to 88-23.

This Court held in a related case that "screenshots of the game are sufficient to establish the content of the protected audiovisual elements." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1111 (N.D. Cal. 2021). However, in this case, Atari has failed to introduce any admissible evidence of screenshots. Atari seeks to rely on examples of artwork contained in an expert report, as well as on screenshots produced during discovery. ECF No. 112 at 20-21 (citing to declarations and exhibits filed at ECF No. 112-8 at 2, 14-20, 133-36). But the expert report is inadmissible because it is unsworn and attached only to the declaration of an attorney, who "can neither swear to the truth of the opinions in the document nor authenticate it." *Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *2 (C.D. Cal. Aug. 4, 2014). Similarly, the attorney's declaration states only that the screenshots are a "true and correct

copy of screenshots taken from Atari's Greatest Hits Volume I." ECF No. 112-8 at 2 (¶ 10). But this neither indicates whether the purported screenshots came from the DS version of Atari's Greatest Hits Volume I, which is what the copyright registration covers, nor lays any other foundation for connecting the screenshots to any of the registrations. Atari also cites to an exhibit that appears to show video game covers and states that these images were "obtained from the Copyright Office, showing the relevant deposit copies." ECF No. 112 at 21. But the declaration introducing such evidence states only that the cited exhibit is a "true and correct copy of a document bearing bates stamps AT005575-76" and does not establish that the exhibit is what Atari claims. ECF No. 112-8 at 3 (¶ 12).

Absent evidence of what work is covered by Atari's copyrights, Teespring is entitled to summary judgment on Atari's copyright claims.

### C. Damages

Finally, Teespring seeks to preclude Atari from seeking actual damages; statutory damages beyond the minimum amount; and enhanced damages based on willful infringement. Its first argument is moot: Atari states that it "will seek to recover statutory damages at trial," ECF No. 112 at 22, and does not intend to seek actual damages.

In a similar case involving infringement claims by Atari against a different defendant, this Court explained that "Atari may seek an award of minimum statutory damages without disclosing any damages calculations but, to avoid a potential windfall, it must provide some evidence of its lost profits or [the defendant's] profits if it seeks an award greater than the statutory minimum." *Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 888-89 (N.D. Cal. 2021). The Court precluded Atari from introducing at trial evidence relevant to a statutory damages award that was not produced during discovery, but it allowed Atari to present evidence the defendant had produced related to its own revenue from sales of allegedly infringing products. *Id.* The Court makes the same rulings in this case, where Atari has similarly failed to disclose any damages calculations.

However, this case differs from *Atari v. Redbubble* in one important respect. In that case, the Court concluded that Atari had not presented sufficient evidence to survive summary judgment

6

on the question of willfulness.  *Id.* at 885-86; *Atari v. Redbubble*, 515 F. Supp. 3d at 1116-17.  Here, by contrast, the Court concluded above that Teespring is not entitled to summary judgment on the question of whether it had knowledge of infringing activity.  Because willfulness can be established by actual notice, Teespring is likewise not entitled to summary judgment on Atari's claims for enhanced damages based on willful infringement.  *See VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 748 (9th Cir. 2019).

Teespring's motion for summary judgment on damages is granted in part and denied in part.  As in *Atari v. Redbubble*, "Atari may seek the minimum amounts of statutory damages. . . . If it seeks more than the minimum amounts, it may rely . . . on documents produced by [Teespring] showing [Teespring's] revenues."  546 F. Supp. 3d at 889.  Atari may also rely on evidence of willfulness, identified or disclosed prior to the close of fact discovery, to support a statutory damages award above the minimum amounts.

## CONCLUSION

Teespring's motion for summary judgment is granted in part and denied in part.  The motion is denied as to Atari's trademark claims, granted as to Atari's copyright claims, and granted in part and denied in part as to damages.

**IT IS SO ORDERED.**

Dated:  March 9, 2022



JON S. TIGAR
United States District Judge